Next case of the afternoon is in re Marriage of Ray 413-0326 for the appellant, Mr. Mag, for the athlete, Mr. Webster. You may proceed. Thank you, Your Honor. May it please the court, counsel. My name is Thomas Mag. I represent David Ray in this case. As the court is no doubt aware, this is a contempt case. My client, Mr. Ray, was ordered to make various payments to his soon-to-be ex-wife, and apparently they have not been paid. My client was directed, according to the record, to appear at a show-cause hearing, which ultimately took place, and Mr. Ray, unfortunately, in addition to being a party in a divorce case, is also a criminal defendant in a case pending in the United States District Court for the Southern District of Illinois, dealing with, among other things, income tax evasion. Accordingly, Mr. Ray invoked his Fifth Amendment right against self-incrimination in the divorce case, specifically the show-cause hearing, and was held in contempt of court because of that. The appeal in this case is raised primarily because, while generally speaking, yes, an adverse inference in a civil case can be invoked when a Fifth Amendment protections are raised in a civil case, per the United States Supreme Court incited in the brief, that cannot be the only evidence of which the contempt hearing or the factual finding is based. There has to be some additional evidence. In this case, there was no such additional evidence showing intentional, willful violation of a court order. What should have taken place, assuming that Mr. Ray was invoking his Fifth Amendment right against self-incrimination, is that some other evidence be presented to the court, not necessarily a great deal of evidence, but some additional evidence to the court by the parties seeking contempt to show an intentional, willful violation, such as the ability to comply with the court order. How do we know that didn't happen? There's no record of it happening. The only... What does the record show as far as what happened at the trial? I believe what would actually show is... What does it show? What the record actually shows, in this case, is that Mr. Ray appears for a contempt hearing, that he is called as a witness in the case, that he invokes his Fifth Amendment right, and that there is no other testimony on anything to do with Mr. Ray's ability... Do we have a transcript of the proceedings of the hearing? I believe it's in the record, but I can't swear to it. So you're not sure whether we have the transcript of the March 20, 2013 hearing? I believe we do, but I don't want to swear to it, Your Honor. It was my... What if we don't? The record in this case is also shown by the order of the trial court, wherein... So if the record is incomplete, don't we resolve any doubts from the incompleteness against the appellant? Generally speaking, that is true. However, the record is more than just a typewritten affair. For instance, we have the memorandum in order of the trial court, where the court set forth its findings. And expressly, it's attached as the Appendix A-10, it's in the record as C-184, makes reference to the fact that Mr. Ray is invoking his Fifth Amendment rights, that the court considers and responds to his Fifth Amendment rights and understands that he does not want to incriminate himself or jeopardize his potential criminal case, and that goes on and then makes reference to what took place there. So we actually do have a record, even in the absence of a transcript. Is there some reference by the court? Yes. Does that order purport to represent all the evidence presented? I believe it does, yes. So the court found that prima facie cases were made out? Yes, it did. Well, then what happens next? Generally speaking, in the absence of a Fifth Amendment issue, the burden would shift to the other side to then rebut the presumption. Why doesn't it still shift? Because in the Fifth Amendment arena, my client has a right to invoke his right of self-incrimination in all matters, civil or criminal. While there's admittedly a result to him imposing his Fifth Amendment rights, the court cannot find him liable for contempt based solely on his invoking the Fifth Amendment right. Well, did you receive a directive to be prepared to discuss Rylander versus the U.S.? Right here, Your Honor. Rylander, I think, quite frankly, has very little to do with this case, and I'll explain why. First of all, I'm not sure why the U.S. Supreme Court even got to the merits of this case, as it seems to do with corporate records, and it's pretty well established that a corporation has no Fifth Amendment rights. But be that as it may, what Mr. Rylander was being ordered to produce is not testimony. Mr. Rylander was being ordered to produce documents of a corporation that the court in Rylander had previously found that he actually had in his possession. Mr. Rylander, after some procedural machinations, then presented evidence which, again, would have waived his Fifth Amendment rights, but the court went on to... And basically, what the Supreme Court ultimately found was that this case, Rylander, was exactly the opposite of the court's previous hearing in Curcio, C-U-R-C-I-O-V, United States, 354th U.S. 118, 1957. That in Curcio, which is more analogous to the case at Barr here, the conviction for contempt was based, apparently, on the refusal to testify. In Rylander, the conviction was based on the respondent's failure to produce documents as ordered. What could have happened in this case, and didn't happen, and which would have been consistent with Rylander, is the court could have ordered Mr. Ray to produce his bank statements, which would not be covered by the Fifth Amendment because it's not his testimony. Once the burden shifted to your client, why didn't he present his bank statements? Because once my client gets up and testifies about anything beyond his name, he waives his Fifth Amendment rights. Including offering exhibits? If he gets up and authenticates... Okay, why didn't he call someone else then to testify about this stuff? In other words, you say, gee, if I have a Fifth Amendment right, then the burden can't shift to me because I have to testify. Well, you don't have to testify. Call someone else to present the evidence you otherwise would. Would that be barred by the Fifth Amendment? Obviously, the Fifth Amendment does not bar a respondent or a defendant from calling somebody else to testify. So why didn't he? I don't know, Your Honor. Well, then what is your complaint that he was improperly found in contempt? Because the United States Supreme Court has stated that in the Fifth Amendment context, the burden cannot shift. The burden may not be able to shift, and I don't think it's what it says anyway, but assuming that were the case, only to the extent that the only possible response would be the forced testimony. Yes. But that's not the only possible response. There could be, for all we know, other people who might be able to call to testify about his financial circumstances, including his bank. Sure, by the same token... That might be a way to address the burden having shifted to him to show cause why he shouldn't be held in contempt. That might be a way to do it, but... But we don't know because he didn't try. By the same token, his soon-to-be ex-wife didn't present any testimony of his assets either. Well, see, the court found that he hadn't paid, and that carries a presumption that he should have paid, unless there's reason why not. Isn't that the law? No, that is not the law. The mere fact that a court order is in it requiring payment does not, ipso facto, unlike the Rylander case, show that he has the ability to comply. In Rylander... I didn't say it showed he has ability. I said it shifted the burden. Well... Isn't that the law? No, it does not shift the burden because of the Fifth Amendment. If we weren't talking about the Fifth Amendment issues here, I would agree with you. But the Fifth Amendment being a federal constitutional... Counsel, you're not answering my question. Normally, when the rule to show cause for you to make payments, when parties presented evidence, petitioner, that payments haven't been made, the burden has now been shifted. Normally, that's true. And your response is, well, the Fifth Amendment protects me from this shifted burden that I have because I can't be required to incriminate myself. Assuming, for the moment, that's even true, it says nothing about other ways to have met the shifted burden. Calling other witnesses, presenting other evidence, etc. The Fifth Amendment would not bar that. That is correct. Okay, well... And we have no record of any effort made to do that, do we? There, as I understand it, were no other such witnesses or evidence presented. That the inquiry by the trial court ended upon Mr. Ray invoking his Fifth Amendment rights. Did Mr. Ray offer to present any other evidence at the trial level? No, Your Honor. So then the court apparently, properly, concluded that other than Mr. Ray saying, I'm invoking my Fifth Amendment rights, he had nothing else to present? Except the court couldn't do that because the Fifth Amendment... Well, do you mean the court couldn't conclude he had nothing else to present? No, the court could not... The court could arguably conclude that he had nothing else to present, but what the court could not do is take the adverse inference by the fact that he invoked his Fifth Amendment rights, that ipso facto, he was willfully violating a court order. So you think that the language from Rylander, which I'm going to quote, The view of the Court of Appeals would convert the privilege from the shield against compulsory incrimination, which was intended to be, into a sword whereby a claimant asserting the privilege would be freed from inducing proof in support of a burden which otherwise would have been his. Again, Rylander is different than this case. In Rylander, the issue dealt with producing documents of a third party, i.e., a corporation, that were in the subpoena target's possession, arguably. This case had to do with an individual, i.e., not a corporation, who was the subject of a contempt hearing being requested to testify. In this case, Mr. Race... It's not a question of being requested to testify, it's a question of the burden shifts to him, what evidence have you got? Again, the Fifth Amendment... Usually it's his testimony, but it doesn't have to be exclusively his testimony. As a matter of fact, he could have presented all kinds of evidence about how bereft of funds he is, short of testifying himself, couldn't he? Assuming, the record is devoid of this, but assuming that he has a bank account, he could have presented that. But there's no evidence that he has a bank account other than the fact... You keep talking about who's supposed to be supplying the record to the court. Well, as an initial proposition, the party seeking to have somebody in contempt does have an obligation... I'm talking about on review. If there's no transcript, and your assertion is there's no evidence, but the judge enters an order, and you want to appeal from that order, where are we going to get a transcript? We don't. We don't have one. And you're asserting that also the absence of evidence also suggests that he couldn't produce that evidence. Somehow that the absence of him showing that he had no bank account, by whatever means he showed that, means that there's no such evidence. So, everything's a stalemate. He can't be held in contempt. I just don't... I can't grasp it. I don't understand why the Fifth Amendment... First of all, he was held in contempt because he wouldn't answer further questions about why he couldn't produce the records in Rylander. He was held in contempt, not the corporation, because he would not answer additional questions about why he was unable to meet the burden of producing the records. Which is far different than not producing the records. But in Rylander, Your Honor, the court previously found that he had either control of or possession of the records, or both. And the issue in Rylander, when he ultimately was held in contempt, Mr. Rylander, was the fact that he would not testify after he had previously been found to be in possession of the records. In this case, there is nothing in the record, at least not that I'm aware of, that Mr. Ray was found to be able to pay the sums of money that we're talking about. But it was presumed, it is presumed by us, because the record contains the judge's order, that the petitioner made out a prima facie case. And in Illinois, that means the burden either of going forward, the burden of proof, the burden of persuasion, something shifts over to the respondent. And the respondent has to do something. But what the court's order said was the prima facie case was the fact that Mr. Ray did not pay. That was the prima facie case. The mere fact that you don't pay a bill is not a prima facie case that you're willfully not paying it. Let me just show it. In the example, Mr. Ray could have called his dear friend, Ferd Berthel, who would have testified and said, Well, you know, Judge, Mr. Ray's been homeless, and he was living out in the park. And I said, Gee, David, you shouldn't be living like this. And I brought him in, and I've been feeding him and housing him while he's been trying to find some job and get some money. And no doubt counsel within our cross-examination said, Isn't it true you have no idea whether or not Mr. Ray has a bank account at Regions Bank with $100,000 in it? Well, but that would be evidence that you could have offered. Isn't that true? Evidence? To try to demonstrate that, in fact, he has directed the funds, and his failure to pay isn't willful. Assuming that there was a person out there that could testify to that, which, of course, the record is devoid of that. Well, I'm just giving you an example. The only reason I mention it is you keep on saying the only possible evidence would be from Mr. Ray himself, and he has a right to assert the Fifth Amendment, so he doesn't have to testify. And I'm saying that isn't the only possible evidence. I just gave you an example. Suffice it to say, it is Mr. Ray's position that the mere fact that he has not made payments is not prima facie evidence of his willful failure to pay, that under the Fifth Amendment, as explained by the United States Supreme Court, the burden cannot shift over to Mr. Ray in this circumstance. While there may be a circumstance such as a third party being ordered to produce documents where the burden and the third party had been previously found to actually possess or control those documents, such as Rylander, but this case is not Rylander. This case is much more closely attuned to Trucillo, which is cited in Rylander, and which Rylander says that Rylander is the exact opposite of. So, unless your honors have any further questions. I don't think so. Thank you. Thank you. Counsel. Thank you. Mr. Magg. It's a real privilege to appear before you gentlemen and argue my case for my client, Kerry Ray, today. I'm going to start off by addressing some of the questions the court had. I disagree with Mr. Magg. There is a report of proceedings that has word for word the entire hearing that was held on March 26, 2013. And in that hearing, Mr. Ray, when he took the stand, the court examined him initially, and on page 27, lines 1 to 18, hopefully you all have the report of proceedings. Are you going to present any evidence today to show cause? Mr. Ray responded, I plead the Fifth Amendment. Question from the court. Are you going to plead the Fifth as to any and all evidence, testimony that you can present in your defense today, sir? Mr. Ray says, yes, your honor. His attorney then says afterwards, he does take the Fifth. And the court responded by saying, well, once I enter the rule to show cause, the burden shifted to you, Mr. Ray, to show cause, and you have not shown cause. Therefore, the court holds you in contempt for failure to pay child support and maintenance. There was direct testimony from Mrs. Ray, under oath, uncontroverted, where she testified as to the failure to receive any child support from Mr. Ray for the month of December, nor maintenance from him for that month, nor child support for January of 2013, December being 2012, nor maintenance for 2013 in January. The same for February for child support and for maintenance. The court went on to say, without sufficient financial information, respondent, present situation, we set the purge at $1,000 and we hold him in contempt. The court finds this to be a final and appealable order under Section 304A of the Illinois Civil Procedure. I think perhaps what Mr. Magg was referencing regarding evidence was not a transcript of his client claiming the Fifth, but rather what evidence was presented in support of the petition, and what evidence was presented in support of the finding of the court that there was a per se showing of contempt. The testimony that you've referred to is testimony that occurred after he was found in contempt, and she testified about these missing payments. One would presume she could have testified similarly before that, but she didn't as far as we know, or perhaps she did and there's no transcript of that. Well, there is in the transcript where the court holds the hearing and she testifies, and it's after she testifies that the court holds him in contempt and orders him to purge by paying $1,000. So the record contains a transcript of her testimony? What's that? The record contains a transcript of her testimony? Yes, it does. But is that before or after he invokes the Fifth Amendment? It was after. Well, that's what I mean. Oh, okay, I apologize. You know, I think that Mr. Magg was saying there's got to be some other evidence than me invoking the Fifth. The cold record would show the trial judge found that there was a prima facie case, which would shift the burden at least according to some of the questioning that we've asked. But there's no showing of what, there's nothing in the record, I think there's nothing in the record, that shows what he took into account other than just the petition for a rule to show cause, and then he signs it or whatever was presented to him. After Mr. Wray took the Fifth Amendment and further stated that I'm not going to offer any evidence at all. I understand that. I'm talking about before that, when the rule issues. The trial court reached the conclusion that there was a prima facie case, which required Mr. Wray to testify or offer evidence. Yes. And I think what Mr. Magg was saying, maybe not, but what I'm asking about is, what prompted the court to conclude there was a prima facie case? Was it simply the assertion by the petitioner that these funds had not been paid? I think part of it was the verified petition for rule to show cause. Verified petition for rule to show cause. Were these amounts to be paid through the clerk's office? No, they were paid directly. Directly to her. Historically, Judge, that order was entered in December of 2011, and he had made all the payments off and on through October of 2012, and then nothing after that. If you went back through the whole history of the case, there were previous petitions for rule to show cause because of non-payment. But in any event, when the court, and it states in the record that it drew an adverse inference after he took the fifth, and the court was aware that on the verified petition that there was an allegation of so much child support not being paid, so much maintenance not being paid, then even Mr. Ray's counsel admitted to the court at that time that she thought that $14,000 was the arrearage for both the child support and the maintenance at that time. That was someone other than Mr. Ray. That's correct. And the court ruled, even though in our petition we asked the court to award the child support and maintenance that had accrued since we had filed our petition, the court said, no, I'm not going to do that. And that's why the court found that the arrearage on child support was $5,000 and the arrearage on the maintenance was $5,000, but he just set the purge at $1,000.  I think he made reference to that. 10% of the total, or if you look at it, 20% of the child support, one way or the other there. But I know we've cited in our brief, and we brought this to the attention of the court at the time, that is Section 758, ILCS 22-316, special rules of evidence and procedure, if a party called to testify at a civil hearing refuses to answer on the ground that the testimony may be self-incriminating, the prior fact may draw an adverse inference from the refusal. And that's exactly what the court did in this case. And I share a different opinion, Rylander, than Mr. Magg. I think it's like parallel to this case. And while the facts are a little different, it's still somebody who's trying to use the right against compulsory self-incrimination as a sword, not as a shield, as it was intended. We have no problem with the fact that he was entitled to take the fifth, but we do have a problem with him failing then to produce any evidence or to meet his burden, because we do believe, and the court felt, that the burden shifted to Mr. Ray at that time. And that's the essence of my argument. Any other questions? Thank you, counsel. Mr. Magg, rebuttal? Unless your honors have any questions, I don't have any rebuttal. Would Mr. Webster's representation as the record be accurate that previous trial counsel, I'll just say may rather than did, may have conceded that there was a significant unpaid urge at an earlier hearing, at least as to the amount? That is my recollection. Like I referenced earlier, I thought there was a transcript that referenced it, but I couldn't swear to it. But what he represented in this court is my recollection of what I read in the transcript. Okay. All right. Thank you, counsel. We'll take the matter under advisement and adjourn. Thank you, your honor.